Thank you. Case number 19-2706, Minnesota, Gary Luis et al. v. RBC Capital Markets. Mr. Goodwin. Good morning, your honors, counsel. David Goodwin here from Gossips & Glick appearing on behalf of the plaintiff appellants in the breach of contract case against RBC. The central issue here before the court is whether a broker can voluntarily make a promise to follow industry requirements in their contracts with the clients and if there's any recourse for the clients if the broker decides not to do so. As set forth in our briefs, we believe that the record on summary judgment shows that the answer to both questions here is yes. Appellants are all RBC clients with conservative investment risk profiles who are put into investments known as reverse convertible notes or RCNs. These are short-term, high-risk structured products with a risk of having the value of the entire investment plunged to zero. Now here the claims, there's one count simple common law breach of contract claim. In this case, RBC drafted the contract and they voluntarily inserted language to make the transaction subject to various regulations and rules including FINRA regulations and rules. In doing so, RBC was required to follow the industry standards known as a know your customer and in doing so they had to understand the risk appetite for their plaintiffs and here if they apply those rules to the risk appetite for these plaintiffs here, they wouldn't be making these recommendations beyond those appetites and which resulted in major losses for the plaintiffs and major gains for RBC. So here is paragraph 16 of the operative contract includes language that sweeps in this know your customer requirement and notes that all transactions in my account shall be subject to applicable laws and regulations of various agencies. Now as you well know the words before that is I agree that and I think that it means I acknowledge that. Why isn't this more of an acknowledgement than an agreement? Well it's an agreement for sure on the part of both parties. It's a acknowledgement. No it says counsel let me interrupt you. It says I agree. It doesn't say we agree or the parties agree. It says in consideration of RBC doing oh give me a count. I love that but still I agree. So deal with the singular I agree all right and I think it really means I acknowledge so you sharpen the point. Sure and then there's various times in the contract where RBC does use this I language here but you know that's an introductory phrase that's being cited in the contract by the client there but it says that I understand that all of these transactions will be subject to these various regulations and so here it's important to note that RBC is the one who's conducting all these transactions. The clients this is a descriptor an account that RBC is making all the recommendations and the investments there. So to think back to state law the duty I would say if I know this is not a state law case but the duty is on RBC it should say RBC agrees. Right well stick it to them you need that don't you? Well again this is a contract that RBC drafted and it's saying you know that the clients understand that they it's an acknowledgement that they see that RBC is going to conduct this because all the transactions at issue possible are subject are being conducted by RBC here. So there's this is not a situation where the clients could even conduct you know these these transactions on their own if they wanted to. And again this is language to to to show that the RBC is going to to follow these rules and if they follow these rules the clients would not put into these investments. So if you look at it this is there's a two-step analysis to here there's the whether you're eligible to be put into these investment products and then there's a second level suitability well the the eligibility requirement is a bright line threshold analysis that cuts off any sort of further suitability issues. But I think you know this I'd like to point the court's direct attention to the interactive brokers case that we submitted there it's a strong guidance on the situation like this. Well now that's an arbitration case right? It was it was brought in arbitration ultimately appealed up to the district court and of course you may know that the United States Supreme Court has been clear for several years that if the arbiters anywhere near right we're not supposed to we the federal courts are not supposed to mess with them. I know that's a quick and dirty summary of the law but it's not really wrong. So how do you respond to that? For sure and we certainly acknowledge it's a it's a deferential standard there but it does it's important to note that in that case the the plaintiffs and the investors there they brought a breach of contract case and in there there was no there was no sort of implied cause of action under any sort of FINRA rule. The investors there won under under the arbitration ultimately went to the district court which is the case that RBC cited. The fourth circuit reviewed it and reversed it because again going back to whether these investments were even eligible to be in there. But here it's a similar situation to to the present case because RBC is making the trades for the clients in our case whereas the interactive brokers case the interact the the defendant there was was making the trades as well. So and it's also important to note that in the dissent there was there was a dissent in that case as a 2-1 decision but the dissent did not make any issue with whether a breach of contract claim is a viable claim to it only made issue with the damages analysis in in the case there. So now that case of course is there is a en banc petition which was was filed and denied and you know we'll see if there's a cert petition to follow but that does create a a circuit split with the with the GERFINE decision that came out of the second circuit which the defendant realized. Now GERFINE is an unreported case right? Unpublished case or whatever we want to call it these days. Right? Correct? That's my understanding yes. It's my understanding too. So first of all I don't know what makes the circuit split because I think the Supreme Court's view is that an unpublished case like that doesn't conflict with a published one but do you know do you have any view on that because you mentioned circuit split? Well in in in that situation that only adds further support to our position that here we have a fourth circuit case saying that very similar circumstances with language that has this general you know the agreement that these trades are going to be conducted by this various regulatory in compliance with various regulatory bodies will follow those rules. So you know again that it creates even even more support for us here. Okay let me interrupt you again because it did spark this question. Sure. Has the GERFINE case been cited again by the second circuit say in a published opinion? I don't as I sit here I don't I don't know if it's been cited in it's been as okay in a second. We can determine that. Before your time's gone we're halfway there. The Bergmeier case boy if you just look at it I know it's the Minnesota Court of Appeals. I get that. So don't answer about it's not the Minnesota Supreme Court but but address address the Minnesota Court of Appeals Bergmeier case because gosh you just read that and it says subject to all provisions of the Farm Credit Act and you know how the case ends. Go ahead. Sure sure certainly and I think you know the case there well that was about generally applying this Farm Credit Act to the mortgage at issue there here and there's a language in that decision saying that you know there wasn't a very specific language about the things going on here. So we would say you know first of all that there's we're talking about more specific things we're not saying that that the language that RBC inserted here applies to every single aspect. It's talking about the transactions in this account and and second of all I think you know that is a Minnesota Court of Appeals decision but I think we cited to a case in our briefing the the graphic communications local 1b health and welfare fund which was a Minnesota Supreme Court decision there and and that has to do with the pharmacy pricing act and there's an issue of whether a party could bring a false consumer fraud claim in in a situation where there is a regulatory system in place and the Minnesota Supreme Court in the 2014 decision said that a claim under the pharmacy practice act and a consumer fraud act are not mutually exclusive. So we think that the Minnesota Supreme Court decision provides good direction here to show that you can have a claim like this that is not part of a larger regulatory system if you will. And again you know similarly the Palmer Act is a case or the Palmer case is an Eighth Circuit case here that it is the same situation that the Palmer case was decided in 2012 and acknowledged that there was no controlling Minnesota Supreme Court precedent on the issue whereas the the graphic communications health and welfare fund case came out in 2014 and I think clarifies and really you know sharpens the the issue that yes you can have a claim that is outside of this this regulatory framework. And I think going beyond you know there's there's certainly other cases that you have recognized such a breach of contract case they claim in a case like this. So for instance it's on our briefing that the Komanoff case there said you know we don't have to get into whether this is any sort of implied right of action under a FINRA or any other authority because there is a breach of contract claim that's here and that's that's the same situation we have here today where this is not a claim you know trying to assert some new private cause of action this is a clear one count breach of contract claim. This this may not be directly relevant to your argument but I do have a question about the consent decree that the company entered with FINRA. Is there overlap of these plaintiffs with folks who got restitution in that? No that was entirely separate so that was a very small subset of the number of people who were involved in these reverse convertible no transactions so that was I believe had to do with about 200 individuals who were in California who put into these these products and you know our understanding is that there were several thousand of these reverse convertible notes issued in in the class period so it's a it's a from our understanding a much smaller subset of the entire universe. Thank you. And again on the issue of this the the acceptance when the waiver and consent letter you know it's important to note that you know that was that was a negotiated settlement so you know for the idea that it didn't really address you know this question of eligibility or or who should go into this that you know that's you know that's sort of outside of where we we are but I see I'm running into my rebuttal time so I will. You may reserve it. I'll reserve it. Thank you. Thank you. Mr. Langdon. Thank you your honor. Counsel may it please the court this is a breach of contract claim under Minnesota law. Both parties agree that Minnesota law governs the court below reviewed Minnesota law extensively including the Birdmeier case applied it to this language and found it determinative of of the issue here that is whether language that both parties agree to be unambiguous and that simply says subject to I agree as you observe Judge Benton that all the transactions in my account are subject to the very comprehensive securities law regulatory scheme does not itself create a private breach of contract claim where that scheme doesn't have a statutory private right of action. You mentioned that point and and do you want to address the graphic communications case? I'm not as familiar with that candidly as I am with Birdmeier and Nelson and and and Gerfine so tell me about the graphic communications case because it is the Minnesota Supreme Court. It is the Minnesota Supreme Court your honor and the Minnesota Supreme Court did hold that in that circumstance a plaintiff could plead under a specific Minnesota statute the Consumer Fraud Act which is by the by mandate of that Supreme Court to be read extraordinarily broadly. You could plead a specific claim despite the fact that there was no private right of action under that regulation with respect to pharmaceutical drugs. It's a different circumstance here number one if in fact that were the case here this claim would be preempted by SLUSA which is one of our alternative arguments for affirmance and I won't go into that now. SLUSA doesn't apply to, let me interrupt you, because SLUSA does, I'll complete your sentence, SLUSA doesn't apply to a plain old breach of contract right? If it's plain old breach of contract that's absolutely right your honor. Right so I understand it so go back to your argument because that's a detour. So my point is that graphic communications the Supreme Court in no way shape or form said that a breach of contract claim could be created by a clause like that that exists here. A subject to clause we'll call it for short. So it's not it is the Supreme Court but it's not at all on point here. What is on point are the two court of appeals opinions that the district court here cited and parsed and that are cited in our case and which frankly appellants pretty much completely ignore. Bergmeier and Van Iperen. There's the Shermer case as well and they create a canon of contract construction under the governing Minnesota law here which says that a clause like this is not sufficiently specific, not sufficiently promissory to create a claim for a breach of contract for failing to comply with some aspect or another of the statutory scheme that governs securities. You don't just have Bergmeier and you don't just have Van Iperen but you have this court in Palmer and later in Nelson applying Minnesota law in circumstances that are analogous to this in insurance cases where there was a comprehensive insurance regulatory scheme and holding that under Minnesota law a language like this is not sufficiently specific to create a contract. And here I interrupt you again you mentioned Gerfine. Now that case I have cited it. Has the second circuit ever cited it again? Do you know? I am not aware that the second circuit has your honor. I will be happy to undertake that research to determine one way or another. 28J would be fine on the 28J letter would be fine. Do you know if other circuits have cited it? Now that I recall they're all district courts. They are all to my knowledge they are all district courts. So I take your point with respect to whether Gerfine is precedential to me and I believe to the district court it's only informative. Minnesota law here is determinative as the Minnesota Court of Appeals has articulated and as this court has cited it as well. Gerfine is very helpful because it's precisely on point but it is not governing. And I would go further to say in response to your honor's question with respect to the interactive brokers case. I don't think that that regardless of whether Gerfine is sufficiently published that the Supreme Court of the United States would take account of it. The interactive brokers case would not hold that language like this in fact does create a private right of action does create a breach of contract claim. It merely observed in the context of applying a standard which I think your honor admirably described as anywhere near the ballpark an arbitration claim is going to be upheld. Manifest disregard of the law means something way more than the words suggest. It has to be so wrong as to be incomprehensible. And the court merely pointed out hey it's at least arguable that this clause does create a contract claim. So therefore we're not going to apply manifest disregard and the district court God bless his soul was wrong in saying that this was some sort of jack leg operation this arbitration clause. So I don't think interactive brokers creates a circuit split. It certainly doesn't apply Minnesota law and I think it's really a side issue here. The governing Minnesota law is absolutely clear and appellants have not have not only not distinguished it. They have not offered any other competing Minnesota law to suggest that their interpretation is correct. I suggest here that that is determinative and I might observe as well that in Bergmayer in Van Iperen the Minnesota Court of Appeal was content to tell the plaintiffs in those cases that they had no claim. They had no cause of action. They had no remedy for the perceived wrong under state statutory laws that the state government which was charged with enforcing those laws had not enforced. Here we're one better because these these plaintiffs had a remedy. They had the ability to pursue the very claims they're raising here in arbitration and arbitration in under the FINRA provisions and arbitration that they agreed to in their contract. They chose not to do that as their right is and to attempt to bring a class action claim which isn't subject to contract and get themselves into federal court. They didn't succeed. The first time around the district court said no SLUSA preempts and you're out. The second time around the district court said well it is a pure breach of contract claim as you've pleaded it because they didn't have a separate options agreement like you contend plaintiffs that they should have had. But now discovery has shown that that's not right either and now their theory is down to this subject to clause and under Minnesota law it simply cannot stand and there's not been any basis offered to distinguish or to show that the district court's analysis was incorrect and I would observe as well and be happy to rely primarily on on our brief in this regard but it does seem to me that if the appellants were correct that their that their theory for breach of contract here in fact is viable then they have strayed away from a strict breach of contract claim into something that becomes subject to SLUSA because their argument here really is you sold us a risky product that was too risky for us. You didn't do the suitability analysis you should have done so you lied to us. We relied on the fact under this subject to clause that you would sufficiently screen products not to sell ones to us that aren't suitable for us. You failed you lied to us that converts it into a SLUSA claim something about either a misstatement or an omission of a material fact and so even were appellants correct here their case would be preempted anyway under SLUSA something the district court didn't have to reach below but would be appropriate for this court to reach. So I'd be happy to to address any further questions that the court has otherwise I will. Okay let me check uh Judge Shepard any further questions of Mr. Langdon? Judge Kelly any further questions of Mr. Langdon? No further questions. Mr. Langdon I can't resist asking I've held off but I'm going to ask are these kind of products still being sold? They are indeed being sold. Thank you that's that's way beyond the record and if we hadn't had the extra time I wouldn't have asked that question. But listen thank you very much for your argument uh Mr. Goodwood rebuttal. Thank you your honor a couple issues to address uh this the issue of SLUSA and this misrepresentation again the the complaint is clear this is a breach of contract claim the district court recognized that the issue of whether this is a misrepresentation or anything of the sort is is not on appeal here the the claim is the RBC voluntarily inserted this language into their contract with their clients and they said that we are going to abide by these rules and then they did not abide by those rules there's no issue of misrepresentation here this is clear that's this is something that they said they would do to for their clients and they did not do it they took their money and then the clients ended up losing RBC walks away with it uh the issue of looking at suitability versus eligibility no this again like I said this is eligibility is the first threshold analysis there's no suitability analysis to be done at all in a case like this and again that's also supported in the interactive brokers case they did not go into any sort of suitability determination it was pure eligibility um and again all the cases that uh the RBC cites and relies on out of Minnesota you know the court of appeals case they give directions in those specific cases but there's not a case that precludes a claim like this for instance the Van Eperin case uh it said that you know there's no private cause of action under um under the federal act there but they said that the farmers are not precluded from asserting their claim in common law and that's exactly where we are here um again the um in Girfine you know it's it's you know I disagree with the assertion that it's on point again it's a very different situation because that was a case where somebody said I'm going to open an account with America Ameritrade I'm going to trade options or whatever it is I want to and I am acknowledging that yes I am going to abide by these FINRA regulations and rules and I'm going to have money in my account to make the trades and to pay my brokers and well here this isn't a situation because RBC is making all of the trades they're making their recommendations it's not the fact that they're you know in Girfine someone says I acknowledge that I'll be subject to FINRA well of course because they are making the trades here it's the shoes on the other foot where that's not the case at all you have a situation where RBC is making the trades on behalf of their clients and these are trades that were it's not there's no question that they were misrepresented or anything like that it's that they said they would do this they didn't do it and this is how our clients ended up losing a substantial amount of money and to be clear you know the issue about arbitrability you know they're sure there is arbitration but there is no ability for class-wide arbitration in FINRA and so we've you know we have a number of clients and they all have losses it's just not practical to to pursue this in arbitration like I said we know that there have been thousands of these products that were sold in the class period uh so you know this is why the breach of contract claim in federal court is is the viable avenue to resolve this um so unless there are any further questions that's that's all I have. Judge Shepard anything further? Nothing from me. Judge Kelly? Nothing further. Okay that concludes the argument 19-2706 is submitted for decision by the court and Miss Smith does that end our